ORIGINAL

CLERK US DISTRICT COURT
NORTHERN DIST. OF TX
FILED

2010 APR 15 PM 4: 04

DEPUTY CLERK

# IN THE UNITED STATED DISTRICT COURT
## FOR THE
## NORTHERN DISTRICT OF TEXAS

| | |
|---|---|
| ASSOCIATION OF TAXICAB OPERATORS, USA | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| CITY OF DALLAS, | ) |
| | ) |
| Defendant. | ) |

Civil Action No. 3-10CV-769-K

39853

## VERIFIED COMPLAINT

Plaintiff, Association of Taxicab Operators, USA ("Plaintiff" or "Taxicab Drivers"), files this Complaint Defendant, City of Dallas ("Defendant" or the "City of Dallas"), and in support thereof states the following:

### PRELIMINARY STATEMENT

1.      On March 10, 2010, the City of Dallas passed by consent an ordinance providing that taxicabs that have been verified as dedicated compressed natural gas ("CNG") be allowed to advance to the "head-of-the-line" – ahead of all non-CNG taxicabs – at taxicab holding and dispatch areas at Dallas Love Field.  As dictated by the ordinance, this policy was implemented on April 10, 2010, and is currently being enforced.  The "Background" information presented to the Mayor and City Council and the recitals in the ordinance itself implied that this policy was in furtherance of the EPA-approved Texas State Implementation Plan ("SIP") and expressly stated that the policy would "further the city's goal of improving air quality."  Despite the ordinance's tangential references to the SIP, the CNG Preference policy is not part of the SIP.  This puts the

CNG Preference ordinance in conflict with the carefully balanced regime established by the Clean Air Act. Federal law is crystal clear; mobile source emissions – which are primarily automobile emissions – are a matter of federal policy. Defendant's CNG Preference disrupts that policy, and it therefore preempted by the Clean Air Act.

2.     In this suit Plaintiff seeks a declaration from the Court that a CNG Preference policy is preempted by the Clean Air Act. Also, because irreparable harm is imminent and cannot be remedied by any other legal relief, Plaintiff further requests that continuing enforcement of the policy be enjoined by a temporary restraining order and preliminary and permanent injunctions.

## PARTIES AND SERVICE OF PROCESS

3.     Plaintiff, Association of Taxicab Operators, USA, is a Texas non-profit corporation with its principal place of business in Dallas, Dallas County, Texas, which shall be contacted only through the undersigned attorney of record.

4.     Defendant, City of Dallas, is an incorporated city in the state of Texas, and process may be served on the city mayor, clerk, secretary or treasurer, all of whom are located at 1500 Marilla Street, Dallas, Texas 75201.

## JURISDICTION AND VENUE

5.     This Court has subject matter jurisdiction over this case under 28 U.S.C. §§ 1331, 1343 and 28 U.S.C. § 2201.

6.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b).

## PLAINTIFF'S STANDING TO SUE FOR ITS MEMBERS

7.     Plaintiff has standing to bring suit in a representational capacity on behalf of its

members.  In order to show that a representative organization such as Plaintiff has standing to bring suit, Plaintiff must satisfy three criteria.[1]  First, Plaintiff must demonstrate that its members would otherwise have standing to sue in their own right.[2]  One means of doing this is to show that a substantial number of the organization's membership is affected by the challenged policy.[3]  This requirement should not be used to create unreasonably high barriers to associational representation.[4]  Any taxicab operator owning a non-CNG taxicab is subject to being by-passed by the few drivers at Love Field who have dedicated CNG vehicles.  This includes the vast majority of Plaintiff's members operating primarily out of Love Field.  Therefore, Plaintiff satisfies the first criterion for standing to sue.

8.      Second, Plaintiff must demonstrate that the interests it seeks to protect with the lawsuit are germane to Plaintiff's purpose.[5]  Most commonly, this involves a review of the organizational charter of the Plaintiff and a comparison of its organizational purpose to the interests sought to be protected by the Plaintiff in the litigation.[6]  The articles of incorporation of Plaintiff include several stated purposes to which this litigation is germane:

  b.      to defense [sic] and promote the interest of taxicab

---

[1] *See generally, Hunt v. Washington State Apple Advertising Commission*, 432 U.S. 333, 343 (1977).

[2] *See Id.*

[3] *See Id.*

[4] *See New York State Club Ass'n*, 487 U.S. 1, 9 108 S.Ct., 2225 (1988)("[T]he purpose of the first part of the *Hunt* test is simply to weed out plaintiffs who try to bring cases, which could not otherwise be brought, by manufacturing allegations of standing that lack any real foundation.").

[5] *See Hunt* 432 U.S. at 343.

[6] *See New York State Club Ass'n*, ("The associational interests that the consortium seeks to protect are germane to its purpose: appellant's certificate of incorporation states that its purpose is 'to promote the common business interests of its [member clubs].").(citation omitted).

operators in the greater Dallas and fort [sic] Worth area.

\*        \*        \*

d.      Assistance in the procurement of supplies, equipment, and services through group and wholesale purchases. To provide Legal and Financial services to all qualified members [sic].

e.      To improve services to the cities, counties, states, all businesses and agencies.[7]

In filing this suit, Plaintiff is taking a legal position that promotes the interests of the vast majority of its members. It further is providing legal services to its members with non-CNG vehicles by means that would be unavailable because of financial strictures to the vast majority of Plaintiff's individual members. Therefore, Plaintiff satisfies the second prong of the *Hunt* test for determining associational standing.

9.      The third and final criterion for standing is that neither the claim asserted nor the relief requested by the representative association requires the participation of individual members in the lawsuit.[8] This means that the Court must be able to grant relief that, while such relief will be assumed to benefit the individual members of the association, proof of the individual circumstances of such members is not necessary.[9] Declaratory and injunctive relief are precisely the types of relief which may satisfy this requirement.[10] Plaintiff seeks a declaration that the

---

[7] *See* Articles of Incorporation with attached amendment changing organization name, a true and correct copy of which is attached hereto as Exhibit 1.

[8] *See Hunt* 432 U.S. at 343.

[9] *See Id.*

[10] *See Hunt*, 432 U.S. at 343 ("If in a proper case the association seeks a declaration, injunction, or some other form of prospective relief, it can reasonably be supposed that the remedy, if granted, will inure to the benefit of those members of the association actually injured.")(citation omitted.).

CNG Preference Policy enacted by Defendant is preempted by the Clean Air Act, and requests injunctive relief enjoining its further implementation and enforcement.  Such relief will inure to the benefit of all members of Plaintiff who own gasoline powered taxicabs and operate at Love Field.  Thus, the final criterion for establishing standing is satisfied, and Plaintiff has standing to bring this suit on behalf of its members.

## FACTUAL BACKGROUND

10.     On March 10, 2010, the Dallas city council adopted by consent an ordinance providing "a 'head-of-the-line' incentive program for taxicabs operating at Dallas Love Field that are exclusively powered by compressed natural gas (the "CNG Preference Policy").[11]  This policy "allow[s] an elibible taxicab to advance to the front of the taxicab holding and dispatch area, ahead of all ineligible taxicabs...."[12]  According the ordinance itself, the CNG Preference Policy advances "the city's goal of improving air quality."[13]

11.     The recitals ostensibly supporting passage of the CNG Preference Policy were as follows:

> WHEREAS, in 2004, the United States Environmental Protection Agency (EPA) designated nine counties in North Central Texas (including the counties of Dallas and Tarrant) as nonattainment for the pollutant ozone in accordance with the National Ambient Air Quality Standards (NAAQS); and
>
> WHEREAS, four main sources of ground level ozone-causing emissions include on-road mobile sources like cars and trucks;

---

[11]  *See* March 10, 2010 City Council Addendum, dated March 4, 2010, an excerpted, true and correct copy of which is attached hereto as Exhibit 2, which constitutes a statement of a party opponent and which was posted on Defendant's website.

[12]  *See Id.*

[13]  *See Id.*

non-road mobile sources like construction equipment; point sources like electric generating utilities, industrial boilers, and cement kilns; and area sources like solvent use and agriculture; and

WHEREAS, the EPA has proposed strengthening the NAAQS for ground level ozone from the current standard of 75 parts per billion (ppb) to between 60 and 70 ppb; and

WHEREAS, the development of an air quality plan, known as the State Implementation Plan (SIP), is required for all nonattainment areas in order to demonstrate how ozone will be reduced to levels compliant with the NAAQS; and

WHEREAS, the SIP for the Dallas-Fort Worth nonattainment area includes programs to get older cars off the road, technologies to clean up vehicles already on the road, and education programs so that citizens can do their part in improving air quality in North Central Texas; and

WHEREAS, vehicles that operate exclusively on compressed natural gas (CNG), which is an alternative fuel under the Energy Policy Act of 1992, contribute less to local and regional air pollution (including particulate matter) than traditional vehicles and assist in reducing problems such as smog, haze, and health issues; and

WHEREAS, the city council finds that the establishment of an incentive program that promotes the use of compressed natural gas in taxicabs authorized to operate at Dallas Love Field is in the best interest of the public health and welfare and will further the city's goal of improving air quality....[14]

12.    The CNG Preference Policy went into effect on April 10, 2010, and is currently being enforced at Dallas Love Field.

13.    Only 8 to 10 CNG taxicabs are operating out at Love Field.  This leaves the hundreds of non-CNG taxicab operators at an insurmountable disadvantage.  The net effect of the CNG Preference Policy at Dallas Love Field has been that non-CNG taxicab operators are losing

_____

[14] *See Id.*

**VERIFIED COMPLAINT**                                                                                          **Page 6**

two to three trips a day out of Love Field, on average, since the policy went into effect last
Saturday.

14.     The lost revenues are causing irreparable injury to Plaintiff and its members.
First, the lost revenues likely are not legally compensable under 42 U.S.C. § 1983.  Second, the
contacts made by individual drivers with airport travelers are their primary source for new
personal business.  As in many other businesses, taxicab operators at Love Field attempt to
establish a "book of business" comprised of people who rely on a particular taxicab driver when
they are in Dallas.  When, as here, the drivers' contacts out of the airport stand are reduced, they
lose not just the revenue for the particular trips lost, but they also lose the opportunity to build
their book of business through this critical source of contacts.  The economic effect of this on
individual drivers, while very real, is difficult to calculate with reasonable certainty.

### CLAIM FOR RELIEF

**First Declaratory Judgment Action - Express and Implied Clean Air Act Preemption**

15.     Plaintiff repeats and re-alleges the preceding paragraphs as though fully set forth
herein.

16.     By enforcing the CNG Preference at Love Field, Defendant City of Dallas is
violating the federal Clean Air Act ("CAA").  The CNG Preference is a "standard relating to the
control of emissions from new motor vehicles." *See* 42 U.S.C. § 7543(a).  The intent and effect
of the CNG Preference is to regulate emissions to a degree and in a manner that is outside the
carefully balanced approach established by the CAA, and partially implemented through the SIP
as found in the Texas Administrative Code.

17.     The challenged regulation is therefore preempted by section 209(a) of the

CAA, 42 U.S.C. § 7543(a), which states: "No State or any political subdivision thereof shall adopt or attempt to enforce any standard relating to the control of emissions from new motor vehicles or new motor vehicle engines subject to this part." 42 U.S.C. § 7543(a).

18.     Plaintiff has a legally protected interest under the Constitution, the CAA, and other federal laws (including 42 U.S.C. § 1983) in the full enforcement of the federal CAA against the CNG Preference.  Plaintiff and its members will be actually and irreparably injured with respect to their federally protected interests by the challenged regulation, if the regulation actions are not declared unlawful and if defendant is not enjoined from implementing and enforcing it.  The public interest will be served by such declaratory and injunctive relief.

19.     A clear and judicially cognizable controversy exists between Plaintiff and Defendant regarding whether the Love Field CNG Preference Policy is preempted by the CAA. Plaintiff contends that the regulation is currently preempted and cannot be enforced.  Defendant only recently implemented and is enforcing the CNG Preference Policy and will continue to enforce it to the detriment of Plaintiff and its members.  In addition to its prohibition on enforcement of the regulation, the CAA prohibits the adoption of the regulation challenged here, separate and apart from its enforcement.

20.     To redress the violations of federal law and the interference with Plaintiff's rights described herein, and pursuant to 28 U.S.C. §§ 1331, 1343, 2201-2202 and other provisions of law, including the Supremacy Clause and 42 U.S.C. §§ 1983, 1988, Plaintiff requests a declaration that the CNG Preference Policy is preempted by the CAA.  Unless a temporary restraining order and temporary and permanent injunctions are not issued enjoining its doing so, Defendant will continue to enforce the challenged regulation in violation of the CAA and

Plaintiff's rights under federal law. Plaintiff is, therefore, also entitled to injunctive relief restraining and redressing these violations of federal law and their rights under 42 U.S.C. §§ 1983, 1988, and the Supremacy Clause, and other provisions of law.

## REQUEST FOR RELIEF

21.     On the basis of the foregoing, Plaintiff requests that Defendant be cited to appear and answer herein and that Defendant, as well as its agents, servants, representatives, employees, attorneys, and all other persons or entities acting in concert or participating with Defendants who receive actual notice of the Order by personal service or otherwise, be temporarily and permanently enjoined and restrained by the following injunction provision:

> Defendant is restrained and enjoined from allowing taxicabs
>
> permitted at Dallas Love Field which utilize CNG powered engines
>
> to be given any "head-of-the-line" privileges at Dallas Love Field.

22.     Upon final trial hereof, Plaintiff requests that the Court issue a declaration at the CNG Preference Policy is preempted by the Clean Air Act and such other and further relief to which Plaintiff may show itself to be justly entitled.

Date:   April 15, 2010

Respectfully submitted,

**GLAST PHILLIPS & MURRAY, PC**

By: _____

    Kelly D. Hollingsworth
    Texas Bar No. 00793966
    John W. Bryant
    Texas Bar No. 03277500

2200 One Galleria Tower
13355 Noel Road, LB 48
Dallas, Texas 75240-6655
khollingsworth@gpm-law.com
(972) 419-7180

**ATTORNEYS FOR PLAINTIFF**

## **VERIFICATION**

| | |
|---|---|
| **STATE OF TEXAS** | § |
| | § |
| **COUNTY OF DALLAS** | § |

BEFORE ME, the undersigned authority, on this day personally appeared Dr. Al-Fatih Ameen, who being by me duly sworn on his oath deposed and stated that he is Chairman of the Board of Directors of Plaintiff Association of Taxicab Operators, USA, that he is authorized to make this verification, that he has read the above and foregoing Verified Complaint, and that the statements of fact contained therein are within his personal knowledge and are true and correct.

_____
Dr. Al-Fatih Ameen, Chairman
Association of Taxicab Operators, USA

SUBSCRIBED AND SWORN TO BEFORE ME this 15th day of April, 2010.

CHERIE WATSON
Notary Public, State of Texas
My Commission Expires July 24, 2012

_____
Notary Public, State of Texas

**FILED**
In the Office of the
Secretary of State of Texas

**MAY 14 2001**

Corporations Section

# ARTICLE OF INCORPORATION

## OF

# ASSOCIATION OF UNITED TAXICAB OPERATORS

We the undersigned natural persons of the age of eighteen (18) years or more, residents of the state of Texas, acting as incorporators of a corporation under the Texas business corporation act. do hereby adopt the following articles for such corporation:

## ARTICLE ONE
### Name of Corporation

The name of the corporation is ASSOCIATION OF UNITED TAXICAB OPERATORS.

## ARTICLE TWO
### Type of Corporation

The corporation is a Non-profit corporation.

## ARTICLE THREE
### Duration of Corporation

The period of its duration is perpetual.

## ARTICLE FOUR
### Purpose

This corporation is a non-profit organization for Taxicab drivers and should not be misconstrued or interpreted as a union.

The purpose of this corporation is as follows:

a. To transact any and all lawful business for which corporations may be incorporated under the Texas Business Corporation Act.
b. To defense and promote the interest of taxicab operators in the greater Dallas and fort Worth area.
c. To provide benefits to taxicab drivers and their families.
d. Assistance in the procurement of supplies, equipment and services through group and wholesale purchases. To provide Legal and Financial services to all qualified members.
e. To improve services to the cities, counties, states, all businesses and agencies.
f. To improve taxicab drivers standard of operation and performance through training, drivers educational programs and monitoring.
g. To improve customer service through promotional, marketing, adverting and public relations.

This corporation is organized pursuant to the Texas non-profit organization act and does not contemplate pecuniary gain or profit to the members thereof and is organized for non-profit purposes.

**EXHIBIT**

tabbies'

No part of the net earning of the corporation shall inure to the benefit of, or be distributed to its members, directors, officers, or other private persons. Except that the corporation shall be authorized and empowered to pay reasonable compensation for services rendered and to make payments and distributions in furtherance of the purpose set forth in the article.

No substantial part of the activities of the corporation shall be for carrying out or attempting to influence legislation.

Notwithstanding any other provision of these articles, the corporation shall not carry on any other activities not permitted to be carried on (a) by a corporation exempted from federal income tax under section 501(c)(3) of the internal revenue code, or corresponding section of any future federal tax code. Or by a corporation, contributions to which are deductible under the section 170(c)(2) of the internal revenue code, or corresponding section of any future federal tax code.

Upon dissolution of the corporation, assets shall be distributed for one or more exempt purpose within the meaning of section 501©(3) of the internal revenue code, or shall be distributed to the federal government, or to state, or local government for a public purpose.

Any such assets not disposed of by the court of common pleas of the county in which the principal office of the corporation is located, exclusively for the purpose or to such organization or organizations, as said court shall determine, which are organized and operated exclusively for such purpose.

## ARTICLE FIVE
### Requirement

The corporation will not commence business until it has received from her members a consideration of the value of one thousand dollars (1,000.00) consisting of money, labor done, or property actually received.

## ARTICLE SIX
### Location and Agent

The street address of its initial registered office is 7506 West John Carpenter Freeway, Suite 200, Dallas, Texas 75247, and its initial registered agent at that address is Douglas A. Uchendu.

## ARTICLE SEVEN
### Board of Directors

The number of directors constituting the initial Board of Directors is fifteen and the name and address of the persons who are to serve as Directors until the first annual meeting of members or until their successors is elected and qualified are:

NAMES AND ADDRESSES ARE AS FOLLOWS:

Mohammad T. Khan
2402 Mac Arthur Blvd #1307
Irving, Texas, 75062

Ankamah Atteffah
5212 Kelly Hill drive
Arlington, Texas, 76017

Mulugeta B. Gizaw
10435 East Northwest Highway #D
Dallas, Texas, 75238


Jim Lawson
2442 Channing Dr.
Grand Prairie, Texas, 75052

Himuy A. Dagne
8209 Meadow Road #2011
Dallas, Texas, 75231

Harbi S.A. Hassan
1228 North Britain #227
Irving, Texas, 75061

Azmar Javed
1106 Sopogrande blvd
Euless, Texas, 76040

Xone Siharath
1132 Milner Road
Irving, Texas, 75061

Joseph Agyekum
2504 Silverbrook lane #705
Arlington, Texas, 76006

Gabriel Ugege
1515 Runningbrook #2020
Arlington, Texas, 76010

Gus Teyeh
307 Vine Street #128
Euless, Texas, 76040

Abdu A. Aman
2791 Jerrdee Cir. #16F
Dallas, Texas, 75229

Beverly Soleta
1423 Wiscasste Road #141
Arlington, Texas, 76010

Suchai Angwatanakul
3810 Pocatello Street
Irving, Texas, 75062.

Douglas A. O. Uchendu
3109 West Northgate Drive #1025
Irving, Texas, 75062

## ARTICLE EIGHT
### Power of the Board

The Board of Directors shall have the power to make, alter, amend or repeal the bylaws of the corporation or to adopt new bylaws.

## ARTICLE NINE
### Indemnification

The corporation shall to the fullest extent to which it is empowered to do so by the Texas Business Corporation act or any other applicable laws as may from time to time in effect, indemnify any person who was, is or is threatened to be made a party to any threatened, pending or completed action, suit or proceeding, whether civil, criminal, administrative or investigative, by reason of the fact that he is or was a director or officer of the corporation, or is or was serving at the request of the corporation as a director, officer trustee, employee, agent, or similar functionary of another corporation, trust or other enterprise, against all expenses (including attorney's fees), judgments, fines and amounts paid in settlement actual and reasonably incurred by him in connection with such action, suit or proceeding. The corporation's obligations under this section include, but are not limited to, the convening of any meeting, and the consideration of an matter thereby, required by statue in order to determine the eligibility of any officer or director for indemnification. Expenses incurred in defending a civil or criminal action, suit or proceeding shall be paid by the corporation in advance of the final disposition of such action, suit or proceeding upon receipt of an undertaking by or on behalf of the director, officer, employee or agent who may be entitled to such indemnification, to repay such amount if it shall ultimately be determined that he is not entitled to be indemnify by the corporation. The corporation's obligation to indemnify and to prepay expenses under this section arise, and all rights granted to director, officers, employees or agents hereunder shall vest, at the time of occurrence of the transaction or event to which such action or conduct to which such action, suit or proceeding relates was first taken or engaged in (or omitted to be taken or engaged in), regardless of when such action, suit or proceeding is first threatened, commenced or completed. Notwithstanding any other provision of these Bylaws or Articles or Certificate of Incorporation of the corporation, no action taken by the corporation, either by amendment of the Bylaws or the certificate of Incorporation of the or otherwise, shall diminish or adversely affect any rights to indemnification or prepayment of expenses granted under this section which shall have become vest as aforesaid prior to the date that such amendment or other corporate action is taken. Further, if any provision of this section shall be held to be invalid or unenforceable, the validity and enforceability of the remaining provisions shall not in any way be affected or impaired.

## ARTICLE TEN
### Incorporator

The name and address of the Incorporator is:

NAME AND ADDRESS
Harbi Sharif Ali Hassan
1228 North Britain #227
Irving, Texas, 75061

IN WITNESS WHEREOF,   I,   the undersigned Incorporator of this corporation, have executed these Articles of Incorporation on this  day 08 , May 2001.

Harbi Sharif Ali Hassan,
Incorporator

THE STATE OF TEXAS
COUNTY OF DALLAS

BEFORE ME, a Notary Public, on this day personally appeared name, known to me to be the person whose name is subscribed to in the foregoing document and, being by me first duly sworn declared that the statements contained therein are true and correct.

Given under my hand and seal this day  8th  of, May            , 2001.

JOSEPH COFFEY
NOTARY PUBLIC
State of Texas
Comm. Exp. 08/06/2004

NOTARY PUBLIC—State of Texas

Commission expires 08/06/2004

# ASSOCIATION OF TAXICAB OPERATORS,USA

7506 John W. Carpenter Frwy, Ste 300B
Dallas, Tx. 75247

Office Of The Secretary of State
Corporations Section
P.O. Box 13697
James Earl Rudder Office Buliding,
1019 Brazor
Austin, Texas 78701

**FILED**
In the Office of the
Secretary of State of Texas

FEB 0 4 2008

Corporations Sectio

## Re: Amendment to the Article of incorporation of a Texas Non-profit Corporation and Reinstatement.

The Board of Directors of the Association of United Taxicab Operators has adopted a resolution setting forth the following proposed amendment, after voting in a meeting of it's members. The proposed amendment was adopted upon receiving the vote of two-thirds of the votes of members present, in person and by proxy those entitled to cast votes.

Article to be Amended are as Follows.

I. **The Name of the corporation:**

The current name as it currently appears on the records of the Secretary of State:
**ASSOCIATION OF UNITED TAXICAB OPERATORS.**

The Amended name should appear on records of the Secretary of State as:
**THE ASSOCIATION OF TAXI OPERATORS, USA.**

Attach herewith is current members of the Board of Directors and Officers of the Association.

This amendment is in compliance with the statutory provisions of Texas Non-profit corporation Act Article 4.01-4.05.

Douglas Uchendu
GEN-SECRETARY

Sworn Before Me this Day ____ Month _____ Year 2008

Public Notary _____

ADDENDUM ITEM # 3

| | |
|---|---|
| **KEY FOCUS AREA:** | A Cleaner, Healthier City Environment |
| **AGENDA DATE:** | March 10, 2010 |
| **COUNCIL DISTRICT(S):** | All |
| **DEPARTMENT:** | Mayor and City Council |
| **CMO:** | N/A |
| **MAPSCO:** | N/A |

## SUBJECT

An ordinance amending Chapter 5 of the Dallas City Code to provide a "head-of-the-line" incentive program for taxicabs operating at Dallas Love Field that are exclusively powered by compressed natural gas - Financing:  No cost consideration to the City

## BACKGROUND

The City of Dallas is located in an area designated by the United States Environmental Protection Agency (EPA) as nonattainment for the pollutant ozone in accordance with the National Ambient Air Quality Standards (NAAQS). The development of an air quality plan, known as the State Implementation Plan (SIP), is required for all nonattainment areas in order to demonstrate how ozone will be reduced to levels compliant with the NAAQS. Vehicles that operate exclusively on compressed natural gas (CNG), which is an alternative fuel under the Energy Policy Act of 1992, contribute less to local and regional air pollution than traditional vehicles and assist in reducing problems such as smog, haze, and health issues. The establishment of an incentive program that promotes the use of compressed natural gas in taxicabs authorized to operate at Dallas Love Field would further the city's goal of improving air quality.

The proposed ordinance would amend Chapter 5 of the Dallas City Code to provide a "head-of-the-line" incentive program at Dallas Love Field that would allow a taxicab that has been verified as a dedicated CNG vehicle to advance to the front of a taxicab holding or dispatch area (excluding a taxicab stand), ahead of all non-CNG taxicabs, in accordance with rules, regulations, and procedures promulgated by the Director of Aviation. The proposed ordinance would take effect April 10, 2010.

## PRIOR ACTION/REVIEW (Council, Boards, Commissions)

This item has no prior action.

EXHIBIT

tabbies

2

**FISCAL INFORMATION**

No cost consideration to the City.

3/1/2010

ORDINANCE NO. _____

An ordinance amending Sections 5-58 and 5-59 of and adding Section 5-61.1 to CHAPTER 5, "AIRCRAFT AND AIRPORTS," of the Dallas City Code, as amended; providing a "head-of-the-line" incentive program for taxicabs operating at Dallas Love Field that are exclusively powered by compressed natural gas; providing a penalty not to exceed $500; providing a saving clause; providing a severability clause; and providing an effective date.

WHEREAS, in 2004, the United States Environmental Protection Agency (EPA) designated nine counties in North Central Texas (including the counties of Dallas and Tarrant) as nonattainment for the pollutant ozone in accordance with the National Ambient Air Quality Standards (NAAQS); and

WHEREAS, four main sources of ground level ozone-causing emissions include on-road mobile sources like cars and trucks; non-road mobile sources like construction equipment; point sources like electric generating utilities, industrial boilers, and cement kilns; and area sources like solvent use and agriculture; and

WHEREAS, the EPA has proposed strengthening the NAAQS for ground level ozone from the current standard of 75 parts per billion (ppb) to between 60 and 70 ppb; and

WHEREAS, the development of an air quality plan, known as the State Implementation Plan (SIP), is required for all nonattainment areas in order to demonstrate how ozone will be reduced to levels compliant with the NAAQS; and

WHEREAS, the SIP for the Dallas-Fort Worth nonattainment area includes programs to get older cars off the road, technologies to clean up vehicles already on the road, and education programs so that citizens can do their part in improving air quality in North Central Texas; and

WHEREAS, vehicles that operate exclusively on compressed natural gas (CNG), which is an alternative fuel under the Energy Policy Act of 1992, contribute less to local and regional air pollution (including particulate matter) than traditional vehicles and assist in reducing problems such as smog, haze, and health issues; and

WHEREAS, the city council finds that the establishment of an incentive program that promotes the use of compressed natural gas in taxicabs authorized to operate at Dallas Love Field is in the best interest of the public health and welfare and will further the city's goal of improving air quality; Now, Therefore,

BE IT ORDAINED BY THE CITY COUNCIL OF THE CITY OF DALLAS:

SECTION 1. That Section 5-58, "Definitions," of Article II, "Ground Transportation Services at Love Field Airport," of CHAPTER 5, "AIRCRAFT AND AIRPORTS," of the Dallas City Code, as amended, is amended to read as follows:

**"SEC. 5-58.          DEFINITIONS.**

In this article:

(1)     AIRPORT means all of the land, improvements, facilities, and developments within the boundaries of Dallas Love Field Airport.

(2)     AUTOMATIC VEHICLE IDENTIFICATION ("AVI") TAG means an electronic tag issued by the North Texas Tollway Authority that may be used to charge trip fees for ground transportation vehicles operating at the airport.

(3)     BUS has the definition given that term in Chapter 10 of this code.

(4)     CERTIFICATE OF REGISTRATION or REGISTRATION means a certificate of registration issued by the director under Section 5-62 of this article that authorizes the operation of a courtesy vehicle service at the airport.

2

(5)    CONCESSION CONTRACT means a contractual agreement between the city and another person for the provision of car rental and parking services at the airport, under which the city receives a minimum monthly payment or percentage of the gross revenues received by the contractor for such services.

(6)    COURTESY VEHICLE means a motor vehicle that is:

(A)    neither for hire nor used to transport a passenger in exchange for direct compensation; and

(B)    operated by or on behalf of a hotel, motel, automobile rental, auto auction, or parking company in performing ground transportation service at the airport.

(7)    COURTESY VEHICLE SERVICE means the business of performing ground transportation service using courtesy vehicles.

(8)    DECAL means a decal issued by the director under Section 5-62 of this article authorizing a courtesy vehicle to be operated at the airport.

(9)    <u>DEDICATED COMPRESSED NATURAL GAS VEHICLE means a vehicle that operates exclusively on compressed natural gas.</u>

(10)    DIRECTOR means the city's director of aviation or the director's designated representative, including the transportation coordinator.

(11) [(10)]    DRIVER means an individual who drives or operates a ground transportation vehicle.

(12) [(11)]    FIXED-BASE[Đ] OPERATOR means a person who provides full-service aircraft maintenance, aircraft rental, passenger charter flight service, or fuel operations for compensation at the airport.

(13) [(12)]    GROUND TRANSPORTATION SERVICE means the business of using the roadways at the airport for the purpose of dropping off or picking up passengers at the airport's terminal building or other areas of the airport.

(14) [(13)]    GROUND TRANSPORTATION VEHICLE means a taxicab, bus, shuttle vehicle, limousine, or courtesy vehicle that is used for performing ground transportation service at the airport.

(15) [(14)]    HOLDER means a person who is granted operating authority to perform ground transportation service at the airport, and includes any person with an ownership interest in the ground transportation service.

3

(16) [(15)]     LAWFUL ORDER means a verbal or written directive issued by the director in the performance of official duties in the enforcement of this article and any rules and regulations promulgated under in this article.

(17) [(16)]     LIMOUSINE has the definition given that term in Chapter 10A of this code.

(18) [(17)]     OPERATE means:

(A)     to own, drive, or be in control of a ground transportation vehicle at the airport; or

(B)     to own or be in control of a ground transportation service provided at the airport.

(19) [(18)]     OPERATING   AUTHORITY   means   a   permit,   reciprocal agreement, certificate of registration, or other permission granted by the city to operate:

(A)     a bus or shuttle service under Chapter 10 of this code;

(B)     a limousine service under Chapter 10A of this code;

(C)     a taxicab service under Chapter 45 of this code; or

(D)     a courtesy vehicle service under this article.

(20) [(19)]     OPERATOR means:

(A)     the owner or driver of a ground transportation vehicle; or

(B)     the holder of operating authority to perform ground transportation service at the airport.

(21) [(20)]     OWNER means the person:

(A)     who is the legal owner of a motor vehicle;

(B)     to whom a motor vehicle is registered by the state; or

(C)     who is leasing a motor vehicle.

(22) [(21)]     PERSON means an individual; corporation; government or governmental subdivision; or agency, trust, partnership, or two or more persons having a joint or common economic interest.

(23) [(22)]       SHUTTLE VEHICLE has the definition given that term in Chapter 10 of this code.

(24) [(23)]       TAXICAB has the definition given that term in Chapter 45 this code.

(25) [(24)]       TRANSPORTATION COORDINATOR means the person designated by the director to oversee and manage the ground transportation service operations at the airport.

(26) [(25)]       TRIP means each time passengers are picked up at the airport by a ground transportation vehicle.

(27) [(26)]       TRIP FEE means the monetary amount charged per trip to the owner or operator of a ground transportation vehicle in accordance with Section 5-63 of this article."

SECTION 2.   That Section 5-59, "General Authority for Enforcement," of Article II,

"Ground Transportation Services at Love Field Airport," of CHAPTER 5, "AIRCRAFT AND

AIRPORTS," of the Dallas City Code, as amended, is amended to read as follows:

## "SEC. 5-59.       GENERAL AUTHORITY FOR ENFORCEMENT.

(a)       The director shall implement and enforce this article and may promulgate and enforce written rules and regulations, not inconsistent with this article, governing the operation of ground transportation vehicles and ground transportation services at the airport as the director determines necessary to provide for the orderly, efficient, and convenient flow of traffic, to protect the public health and safety, and to manage the ground transportation system at the airport.

(b)       The director may issue lawful orders, not inconsistent with this article, as the director determines necessary to carry out duties under, or to effect the policy of, this article.

(c)       The transportation coordinator is authorized to enforce this article and all rules, regulations, and lawful orders promulgated or issued by the director under this article."

SECTION 3.   That Article II, "Ground Transportation Services at Love Field Airport," of

CHAPTER 5, "AIRCRAFT AND AIRPORTS," of the Dallas City Code, as amended, is

amended by adding new Section 5-61.1, "Taxicabs That Are Dedicated Compressed Natural Gas

Vehicles," to read as follows:

## "SEC. 5-61.1        TAXICABS THAT ARE DEDICATED COMPRESSED NATURAL GAS VEHICLES.

(a)        A taxicab authorized to operate at the airport will be eligible for "head-of-the-line" privileges in the taxicab holding and dispatch areas if the taxicab is verified as a dedicated compressed natural gas vehicle by the director in accordance with this section and rules, regulations, and procedures promulgated by the director.

(b)        "Head-of-the-line" privileges allow an eligible taxicab to advance to the front of a taxicab holding or dispatch area, ahead of all ineligible taxicabs, in accordance with rules, regulations, and procedures promulgated by the director. "Head-of-the-line" privileges do not apply at taxicab stands used for loading passengers at the airport.

(c)        To receive "head-of-the-line" privileges, the owner or operator of the taxicab must submit to the director the following information:

(1)        The name, address, and telephone number of the taxicab owner or operator.

(2)        A description of the taxicab, including the make, model, vehicle identification number, and state license plate number of the taxicab.

(3)        Proof that the taxicab was:

(A)        equipped by the original manufacturer with an engine exclusively powered by compressed natural gas and has remained unaltered; or

(B)        converted to be equipped with an engine exclusively powered by compressed natural gas, and the conversion was in compliance with *Mobile Source Enforcement Memorandum 1A, the Addendum to Mobile Source Enforcement Memorandum 1A, and the Revised Addendum to Mobile Source Enforcement Memorandum 1A,* as issued by the United States Environmental Protection Agency, and with Title 40, Parts 85 through 88, of the Code of Federal Regulations, as amended.

(4)        Any other information requested by the director that is reasonably necessary to determine whether the taxicab is a dedicated compressed natural gas vehicle.

(d)        Upon determining that a taxicab is a dedicated compressed natural gas vehicle, the director shall issue to the taxicab a sticker or emblem that identifies it as a designated compressed natural gas vehicle eligible for "head-of-the-line" privileges. The sticker or emblem must be displayed on the taxicab in a manner and location approved by the director. The sticker or emblem is nontransferable.

(e)        A person commits an offense if he uses a sticker or emblem issued under this section on an unauthorized vehicle or in an unauthorized manner."

6

SECTION 4.   That a person violating a provision of this ordinance, upon conviction, is punishable by a fine not to exceed $500.

SECTION 5.   That CHAPTER 5 of the Dallas City Code, as amended, will remain in full force and effect, save and except as amended by this ordinance.

SECTION 6.   That the terms and provisions of this ordinance are severable and are governed by Section 1-4 of CHAPTER 1 of the Dallas City Code, as amended.

SECTION 7.   That this ordinance will take effect on April 10, 2010, and it is accordingly so ordained.

APPROVED AS TO FORM:

THOMAS P. PERKINS, JR., City Attorney

By _____
   Assistant City Attorney

Passed _____

LC/DCC/00478A

JS 44 (TXND Rev. 2/10)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
*Association of Taxicab Operators USA*

## DEFENDANTS
*City of Dallas*

(b) County of Residence of First Listed Plaintiff *Dallas*
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**3-10CV-0769-K**

(c) Attorney's (Firm Name, Address, and Telephone Number) *Kelly A Hollingsworth, Ghost Phillips & Murray, P.C., 2200 One Galleria Tower, Dallas TX 75240 - 972-419-7180*

Attorneys (If Known) *Lemuel Thomas*

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1  U.S. Government Plaintiff
☒ 3  Federal Question (U.S. Government Not a Party)
☐ 2  U.S. Government Defendant
☐ 4  Diversity (Indicate Citizenship of Parties in Item III)

RECEIVED
APR 15 2010

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | **PERSONAL INJURY** | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 362 Personal Injury - Med. Malpractice | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Liability | ☐ 365 Personal Injury - Product Liability | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | ☐ 385 Property Damage Product Liability | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☒ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - Alien Detainee | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

☐ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
*Clean Air Act § 209*

Brief description of cause:
*Dec J & Inj. challenging ord. as preempted*

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND:   ☐ Yes   ☒ No

## VIII. RELATED CASE(S) PENDING OR CLOSED:
(See instructions)
JUDGE
DOCKET NUMBER

DATE *4-15-10*
SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____